JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Lyman Gray appeals from his convictions for aggravated murder, aggravated burglary, aggravated robbery, felonious assault, and having a weapon while under disability.
 {¶ 2} In his twelve assignments of error, appellant challenges some of the decisions made by the court on pretrial motions, several of the court's decisions on evidentiary matters that arose during trial, the trial court's procedure in dismissing one of the jurors before deliberation began, the conduct of the prosecutor, the effectiveness of his trial counsel, and his sentence. Appellant further challenges both the sufficiency and the weight of the evidence upon which his convictions rest.
 {¶ 3} This court thoroughly has reviewed the record in light of appellant's challenges; only one is supported, viz., his challenge asserting the trial court failed to give the required findings and reasons for his sentence. Consequently, appellant's convictions and sentences are affirmed, but this case is remanded for a more thorough resentencing hearing.
 {¶ 4} Appellant's convictions result from an incident that occurred at 2221 East 83rd Street in Cleveland, Ohio on the morning of July 16, 2002. At approximately 6:00 a.m., Angenetta Reese lay asleep in bed with her husband Michael when the sound of their home security alarm awoke her. Angenetta immediately thought their young son had tripped the alarm on his way out the door for summer school, so she simply arose, intending to go downstairs to disengage it. As she made her way from the bedroom to the stairway, however, she was jolted fully awake by the sight of two strange men running up the stairs toward her.
 {¶ 5} Angenetta had time only to register the facts that her two children had emerged from their room, the strange men both wore some type of disguise over their features, the man in front seemed taller than the one behind, and the men both carried guns, before she whirled back to her bedroom. She and her children began screaming.
 {¶ 6} Angenetta attempted to slam and to lock the door as a barricade, but it burst open, breaking several bones in her hand as it did so. The first man then entered the room and shouted at Angenetta to "shut [her] big ass mouth."[1] When she did not comply, he struck her in the face with the gun he held, sending her toward the wall. Angenetta could hear her daughter in the hallway; thus, she knew the second man remained outside the bedroom.
 {¶ 7} Before Angenetta could turn to face the attacker, she heard him address her husband. He stated, "[B]ig man, don't get up," then fired his weapon. Aware her husband just had been shot, she increased the volume of her screaming. The shooter repeated his order to her to shut her mouth before firing his weapon behind her a second time.
 {¶ 8} The shooter's companion called to him to "shoot the bitch, too." Although his response was to complain about having "to do all the work," he turned the gun toward Angenetta. She leaped away and toward the floor, however, as he fired. The shot hit her only in one of her legs, but by that time, the intruders were too concerned about the continuing noise of the security alarm to bother further with Angenetta. She heard them scurrying around as they reminded each other that they had to leave, and remained in her prone position until they had left the house.
 {¶ 9} When she was sure they had gone, she checked on her children, then attempted to help her husband. He already was dead; the subsequent autopsy of his body indicated he had sustained two gunshot wounds, and had died from the shot that had struck him in the chest. A spent .38 caliber bullet was discovered on the bed following the removal of his body.
 {¶ 10} Police officers Gillard and Prince arrived in their patrol car within minutes of the incident. They entered the house while another team, Officers Spencer and Varga, assisted outside. Gillard and Prince ensured the perpetrators had gone, observed the scene briefly, and spoke to Angenetta and her children. The EMS squad arrived, but could do nothing to aid Michael Reese, so the investigating detectives soon took over the scene.
 {¶ 11} Spencer and Varga began "canvassing for any clues or evidence" around the house. Spencer noticed a man and a woman lingering nearby; their interest led him to approach them. The man, Tyrone Wallace, informed Spencer he had seen the perpetrators as they fled.
 {¶ 12} Wallace lived a block away across an open field. He had been relaxing in his bed on the second floor of his home when he heard a "clashing" noise that "sounded like someone was breaking and entering" a house, followed a short time later by "three gunshots." Drawn to his front bedroom window by the disturbance, he looked out to see" three guys running across the field" from the direction of the house on East 83rd Street.
 {¶ 13} Wallace noticed they were wearing disguises, two of them carried guns, and one of the gunmen "had like a bag up under his sweater" that he clutched. Wallace watched all three climb into a distinctive vehicle that had been parked on his street: "a powder blue [Oldsmobile] 98" with "chrome molding on the side." After convincing his girlfriend that he should see if he could be of help, he went to the scene.
 {¶ 14} Spencer immediately took Wallace to the supervising officer; Wallace's description of the suspects' vehicle was broadcast via police radio. With their shift over, Spencer and Varga left the scene at approximately 7:30 a.m.
 {¶ 15} The officers were traveling eastbound on Cedar Road only a short distance away from the Reese house, however, when Spencer saw a car pass them westbound that matched Wallace's description of the suspects' vehicle. Immediately, the officers made a U-turn to pursue the vehicle. As they followed it, Spencer observed two men inside.
 {¶ 16} The driver of the vehicle attempted to elude the officers; as he braked to make a turn at the East 87th Street intersection, his passenger "bailed out." The driver, later identified as Demarko Bowman, was apprehended. Wallace identified Bowman as one of the men he had seen running across the field from East 83rd Street. A subsequent search of Bowman's vehicle revealed it contained a "pouch" Angenetta had reported missing from their house; in the pouch her husband kept his valuables, which included credit cards, keys, and a small amount of drugs. Some of the items remained in the pouch upon its discovery.
 {¶ 17} Although questioned about the murder after his arrest, Bowman refused to give the police any information. Later forensic examination of his vehicle eventually yielded the fingerprints of another man, Marcellous Mack. Mack was apprehended in October, 2002.
 {¶ 18} Ultimately, in order to obtain plea agreements in each of the criminal cases brought against them, both Bowman and Mack admitted involvement in the incident. It was not until late 2002 that appellant, Mack's long-time friend, was identified as the third person who had taken part in the crimes.
 {¶ 19} According to Mack, appellant had proposed the idea to him and Bowman to rob Reese, whom appellant knew to be a drug dealer who recently had made a large sum of money. They watched the Reese house for a week or two, finally deciding at a bar on the night of July 15, 2002 to carry out the plan.
 {¶ 20} Mack indicated he did not know Bowman well, but that Bowman kept two guns hidden under the hood of his car; he retrieved them and drove the three of them to the area. They waited for a time before appellant became agitated and determined it was time. Mack said appellant carried a .38 caliber gun while kicking in the front door. Mack put the other weapon, a "Tec-22," in Bowman's hands, but said they discovered during the incident that it was nonfunctional. Mack further indicated that although he entered the house with appellant and Bowman, he lost his will to follow through with the robbery and remained downstairs while the others proceeded with their mission.
 {¶ 21} Bowman's version was similar to Mack's in many respects. He indicated appellant had presented the idea for the robbery about two weeks prior to the incident, which was soon after Mack had been released from jail. Bowman concurred that, after a few drinks at a bar, on the night of July 15, 2002 the three of them had made the final decision to go to the Reese house. Bowman agreed they slept in his car for a time before appellant determined it was time to make their move.
 {¶ 22} However, Bowman placed himself in his vehicle during the incident, insisting only appellant and Mack had entered the house, with Mack carrying the .38 caliber gun. Bowman said appellant carried the other weapon, agreeing with Mack's concession that the other gun lacked an important piece that made it functional.
 {¶ 23} Bowman further agreed with the remaining portions of Mack's story, viz.: after committing the crimes the three of them had gone to appellant's mother's house located on Martin Luther King Drive; they soon became curious about Reese's condition and decided to cruise past his house; Mack had gone in another vehicle driven by one of his friends while appellant had been Bowman's passenger; and they used one of Reese's credit cards to purchase gasoline on their way back to the area of East 83rd
Street.
 {¶ 24} Bowman believed appellant carried some of Reese's other credit cards before the police began their pursuit. Two days after the incident, one of Reese's credit cards was used several times to make purchases in downtown Cleveland. The police department's forensic document examiner attempted to compare the signatures on the credit slips to the signatures of both appellant and Mack prior to appellant's trial, but could not determine either of those men had created them.
 {¶ 25} In their attempt to locate appellant, the police eventually discovered he had been arrested for a crime that had occurred on August 12, 2002. Appellant and another man had been apprehended shortly after breaking into a home on Cleveland's west side. With the suspects, hidden under newspapers on the kitchen table, was a .38 caliber gun. Ballistics tests matched bullets fired from this gun to the bullet found beneath Reese's body.
 {¶ 26} In December 2002, appellant was indicted in this case on eight counts as follows: (1) capital murder, R.C. 2903.01(A); (2) felony murder, R.C. 2903.01(B); (3) and (4) aggravated burglary, R.C. 2911.11; (5) and (6) aggravated robbery, R.C.2911.01; (7) felonious assault, R.C. 2903.11; and, (8) having a weapon while under disability, R.C. 2923.13. Both of the first two counts contained felony murder specifications, and, in addition, each of the first seven counts contained two firearm specifications.
 {¶ 27} Appellant elected to waive his right to a jury trial on count 8; his jury trial on the other charges proceeded in May, 2003. The jury heard testimony from numerous witnesses and reviewed many physical exhibits before rendering the following verdict: not guilty of capital murder, guilty of the remaining six counts, and not guilty of any of the specifications. The trial court thereafter made a finding of guilt on count 8.
 {¶ 28} The trial court ultimately sentenced appellant to terms of incarceration that totaled thirty-three years to life.[2]
 {¶ 29} Appellant presents twelve assignments of error that will be addressed in logical order and combined for review where appropriate.
 {¶ 30} Appellant's eighth assignment of error states:
 {¶ 31} "VIII. The trial court erred in denying the appellant's motion to have the court follow the R.C. 2945.25(C) standard for `death qualification' of the venire persons."
 {¶ 32} Since appellant was neither convicted of the capital murder charge nor sentenced to the death penalty, this issue is moot. Consequently, pursuant to App.R. 12(A)(1)(C), it need not be addressed.
 {¶ 33} Appellant's ninth assignment of error states:
 {¶ 34} "IX. The trial court erred in failing to order the State of Ohio to state its reasons for exercising preemptory challenges."
 {¶ 35} Among over the fifty pretrial motions appellant filed was one which sought the trial court to order the prosecutor during voir dire to state reasons for exercising any preemptory challenges. The record reveals that the trial court considered this motion along with several others during one of the pretrial hearings, and simply overruled it.
 {¶ 36} Appellant failed at that time either to request an explanation or to raise an objection to the decision; therefore, this assignment of error is deemed waived. State v. Williams
(1977), 51 Ohio St.2d 112.
 {¶ 37} Appellant's first, second, and seventh assignments of error state:
 {¶ 38} "I. The trial court erred in allowing evidence that the appellant may have been involved in a burglary subsequent to the one charged in the indictment.
 {¶ 39} "II. The trial court erred in not allowing the appellant to question the wife of the victim about a pervious (sic) identification of one of the codefendants as the man who shot her husband.
 {¶ 40} "VII. The trial court erred in allowing detective Nathan Wilson (sic) to testify as an expert witness."
 {¶ 41} In these assignments of error, appellant challenges decisions of the trial court with regard to the admissibility of evidence. The trial court's decision whether to admit or to exclude evidence, however, is a matter left within its sound discretion. Columbus v. Taylor (1988), 39 Ohio St.3d 162;State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. No abuse of discretion occurred in this case.
 {¶ 42} Appellant first asserts testimony that he was involved in another burglary in August 2002 contravened the stricture of Evid.R. 404(B). Appellant is incorrect.
 {¶ 43} While Evid.R. 404(B) prohibits the introduction into evidence of other crimes merely to prove a person's character "in order to show that he acted in conformity therewith," such evidence is admissible for the purpose of proving, inter alia, preparation, plan, or identity. State v. Broom (1988),40 Ohio St.3d 277, paragraph one of the syllabus. In addition, police officers may testify about the course of the investigation that led to the defendant's arrest. State v. Wilkinson (1980),64 Ohio St.2d 308.
 {¶ 44} One of the main issues in this case was the identity of the third man involved in the Reese murder. Bowman initially refused to give any information; thus, the only other evidence available was a fingerprint obtained from Bowman's vehicle and the bullet left on Reese's bed. Although Mack later was identified from the fingerprint, he gave the third man's name as "Lamont." The detectives, therefore, were stymied until Bowman finally gave them a written statement in November, 2002 identifying appellant as the man who had both proposed the Reese robbery and taken part in it.
 {¶ 45} Bowman's identification gained special credence when the detectives discovered appellant had been arrested for committing a crime that was similar in nature to the break-in at the Reese house, and, further, the gun that had fired a bullet into Reese was in appellant's proximity upon his arrest. Consequently, since the circumstances of appellant's arrest were highly relevant to the issues of plan and identity, the trial court properly admitted the evidence. State v. Williams (1995),73 Ohio St.3d 153; State v. Martin (Jan. 27, 2000), Cuyahoga App. No. 73455.
 {¶ 46} Appellant next complains about the trial court's refusal to permit him to question Angenetta about an" identification" she made. The record reflects Angenetta could not identify Bowman at the "cold stand" that took place soon after the incident. Appellant made a proffer that Angenetta later commented upon seeing a television news broadcast featuring Bowman that he was the man who" was in her bedroom" during the attack.
 {¶ 47} Clearly, an attenuated observation accompanied by a general statement under uncontrolled circumstances was not a proper identification. Since it constituted inadmissible evidence, the trial court did not err in excluding it. Evid.R. 402.
 {¶ 48} Appellant finally asserts the trial court erred in admitting Det. Willson's testimony. Willson compared the ballistic characteristics of bullets fired from the .38 gun recovered at the August 12, 2002 break-in to the one found under Reese's body. However, appellant never objected to Willson's status as an expert witness; consequently, he waived this argument for appellate purposes. State v. Williams (1977),51 Ohio St.2d 112.
 {¶ 49} For the foregoing reasons, appellant's first, second, and seventh assignments of error are overruled.
 {¶ 50} Appellant's twelfth assignment of error states:
 {¶ 51} "XII. Whether trial counsel was ineffective in failing to present the testimony of a ballistic (sic) expert to contradict the reliability of the state's alleged expert."
 {¶ 52} Appellant challenges the performance of his trial counsel solely on the basis that they did not present a defense ballistics expert to testify at trial. Appellant's challenge lacks merit.
 {¶ 53} The claim of ineffective assistance of counsel requires proof that counsels' "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus.
 {¶ 54} The burden is on appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.
Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. The decision to call a witness at trial is a matter of strategy. State v.Hunt (1984), 20 Ohio App.3d 310, 312.
 {¶ 55} From Willson's testimony, it is apparent absolutely no question existed as to the fact the bullet recovered under Reese had been fired from the gun found during appellant's August 12, 2002 arrest. There was no reason under these circumstances to seek further evidence on the matter. Counsel chose, instead, to suggest appellant's accomplice in that later incident had been the third man involved in the Reese murder; this was a reasonable defense.
 {¶ 56} Since the record in this case with regard to trial counsels' actions fails to demonstrate their performance fell below an objective standard of reasonableness, appellant's twelfth assignment of error is overruled.
 {¶ 57} Appellant's fifth and sixth assignments of error state:
 {¶ 58} "V. The prosecutor committed prosecutorial misconduct when it (sic) improperly vouched for the credibility of a witness and by repeatedly referring to the state's evidence as un-contradicted and unchallenged and by offering his personal opinion regarding the evidence.
 {¶ 59} "VI. The prosecutor committed misconduct when he referred to facts not in evidence during closing remarks."
 {¶ 60} Appellant argues improper conduct on the part of the prosecutor compromised the fairness of his trial.
 {¶ 61} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978),64 Ohio App.2d 203, cited with approval in State v. Maurer (1984),15 Ohio St.3d 239. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovich (1987), 33 Ohio St.3d 19;State v. Vrona (1988), 47 Ohio App.3d 145.
 {¶ 62} Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. State v. Tibbets
(2001), 92 Ohio St.3d 146; State v. Smith (1984),14 Ohio St.3d 13. Thus, the test is whether, absent the prosecutor's remarks, the jury would have found appellant guilty. State v. Maurer
(1984), 15 Ohio St.3d 239, 267.
 {¶ 63} In this case, appellant takes issue with some of the prosecutor's statements during the final portion of closing argument. Appellant asserts the prosecutor" expressed his opinion" about the state's case, "endorsed" Willson's testimony, and "insinuated" appellant was "intimidating" the witnesses by having friends in the courtroom during trial.
 {¶ 64} A review of the record, however, demonstrates the remarks appellant challenges were made for the most part in answer to arguments made by defense counsel during his closing.State v. Mason, 82 Ohio St.3d 144, 162-163, 1998-Ohio-370. The comments were neither personal opinion nor improper suggestion about appellant's decision not to present any evidence of his own; rather, they were directed at the strength of the state's evidence. Moreover, the prosecutor's referral to Mack's demeanor while testifying was reasonable; clearly, Mack sought to place most of the blame for the crimes on Bowman instead of his long-time friend appellant.
 {¶ 65} The record, therefore, does not support a conclusion that the prosecutor's comments exceeded the bounds of permissible argument as the advocate of the state. Under these circumstances, appellant cannot demonstrate the prosecutor's conduct compromised the fairness of his trial.
 {¶ 66} Appellant's fifth and sixth assignments of error, accordingly, are overruled.
 {¶ 67} Appellant's fourth assignment of error states:
 {¶ 68} "IV. The appellant was denied due process of law when he was not present during a portion of voir dire."
 {¶ 69} Appellant challenges one of the trial court's actions during the proceedings, claiming the action violated the mandate of Crim.R. 43, which requires the defendant's presence at "every stage of trial."
 {¶ 70} The court paused at the final phase of trial after considering objections to the jury instructions; on the record, it commented that it had "been noticing all day" that two of the jurors had been "sleeping." The trial court discussed the matter with defense counsel, one of whom stated that counsel "object[ed] to Juror No. 12 participating in the deliberations."
 {¶ 71} The parties went off the record briefly, and then the court stated: "Let the record reflect that counsel have asked me to remove Juror No. 12 in chambers and that I should do it * * * now." The juror was called into chambers with the court reporter present and gently dismissed from the panel.
 {¶ 72} Thus, the trial court merely followed appellant's request, and appellant cannot now claim its decision to do so constituted error. State v. Ferguson (1991),71 Ohio App.3d 342, 349. Accordingly, appellant's fourth assignment of error also is overruled.
 {¶ 73} Appellant's tenth and eleventh assignments of error state:
 {¶ 74} "X. Whether the convictions in the instant case are not supported by sufficient evidence.
 {¶ 75} "XI. Whether the convictions in the instant case are against the manifest weight of the evidence."
 {¶ 76} In these assignments of error, appellant challenges both the sufficiency and the weight of the evidence presented at trial. He essentially argues that since no one specifically stated appellant was in the room when Reese was killed, the trial court improperly denied his motions for acquittal, and his felony murder conviction should be reversed.[3] Appellant's argument is unpersuasive.
 {¶ 77} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172. Thus, circumstantial evidence alone may be used to support a murder conviction. State v. Anderson (May 12, 1994), Cuyahoga App. Nos. 65378, and 65379.
 {¶ 78} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin, supra, at 175.
 {¶ 79} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 80} In this case, the evidence demonstrated that within one month of the Reese killing, the gun used in his murder was located in the kitchen of the home appellant was burglarizing at the time. In the August 2002 burglary, moreover, appellant used an accomplice, the same method of entry, and the same method of search to locate valuables in the home.
 {¶ 81} Bowman and Mack, despite the differences in their testimony, both stated appellant proposed the plan to rob the Reese home, decided when it was time to commit the crime, and carried one of the guns into the house.
 {¶ 82} In short, there was consistent, credible evidence that appellant was the third man involved in the felony murder of Michael Reese.
 {¶ 83} Based upon the evidence presented at trial, the trial court correctly concluded appellant's guilt of the crime was for the jury to determine. Similarly, in view of the minor variations in appellant's version of what occurred, the jury acted within its prerogative to credit the testimony of the state's witnesses.
 {¶ 84} For the foregoing reasons, appellant's tenth and eleventh assignments of error also are overruled.
 {¶ 85} Appellant's third assignment of error states:
 {¶ 86} "III. Whether the trial court erred when it ordered consecutive sentences without furnishing the necessary findings and reasons required by R.C. 2929.14(E)(4) and R.C.2929.19(B)(2)."
 {¶ 87} Appellant argues the trial court failed to follow statutory requirements in pronouncing sentence upon him. A review of the record constrains this court to agree.
 {¶ 88} Pursuant to R.C. 2929.14(E)(4), the trial court may order consecutive sentences if it finds such service" is necessary to protect the public * * * and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct * * *." The court further must consider three other factors and, if any one of those factors applies, consecutive sentences are warranted. R.C. 2929.19(B)(2)(C) requires the trial court to give its reasons for imposing consecutive sentences.
 {¶ 89} The trial court did not adequately fulfill the foregoing duties. Moreover, it neglected separately to state the term imposed for appellant's conviction for felonious assault.
 {¶ 90} The trial court stated in relevant part as follows:
 {¶ 91} "The testimony was clear that you indeed were a party to this grave and tragic incident.
 {¶ 92} "The court on count 2 imposes the sentence by law, which it is required to impose, and that is a life sentence in prison, with parole eligibility after 20 years.
 {¶ 93} "* * * The Court notes you have lead (sic) a life of crime * * * and you have been sentenced to prison on at least two occasions.
 {¶ 94} "The Court also notes that you had been found guilty of carrying a concealed weapon in * * * Atlanta, Georgia.
 {¶ 95} "The Court also notes that you have used other birth dates and social security numbers in the past, and your credibility therefore is highly suspect based on that.
 {¶ 96} "The Court sentences you on counts 3 and 4 in accordance with the recommendations of the State, seven years on each count, concurrent, in order to answer for the merger doctrine[4] with each other, but they will be consecutive to the life sentence with parole eligibility after 20 years * * *.
 {¶ 97} "On counts 5 and 6 the Court will sentence you to six years concurrent with each other, as well as the one year on the having a weapon while under disability.
 {¶ 98} "* * *
 {¶ 99} "Those will be concurrent with each other, the six years on 5, 6, and one year on count 8, I think * * *.
 {¶ 100} "Count 7 will all run concurrent and consecutive to count 2.
 {¶ 101} "Therefore adding another six years to your total sentence."
 {¶ 102} The first problem with the foregoing was the trial court's failure separately to state the term it imposed for appellant's conviction on count seven. Pursuant to Crim.R. 43(A), the defendant must be present at "the imposition of sentence;" this implies the trial court had an obligation at the sentencing hearing itself to inform appellant he had been sentenced to a concurrent term of five years on count seven. It therefore was improper for the trial court to set forth the specific length of the term on this count only in the journal entry of sentence.
 {¶ 103} Secondly, the trial court neglected to set forth the statutory findings it made along with its reasons for choosing a consecutive sentence. Pursuant to R.C. 2953.08(G)(1), when the trial court has failed to pronounce the necessary statutory findings, this court must "remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings," and, concomitantly, its reasons, for the imposition of consecutive sentences. State v. Comer,99 Ohio St.3d 463; 2003-Ohio-4165; cf., State v. Hornbeck,155 Ohio App.3d 571, 2003-Ohio-6897.
 {¶ 104} This is not to state appellant's sentence was "contrary to law," as was the result under the older version of R.C. 2953.08. State v. Edmonson, 86 Ohio St.3d 324,1999-Ohio-110. Instead, the new statutory mandate envisions a sentencing proceeding in this type of remand that is supplemental to the original sentencing hearing, which forestalls multiple appeals of the same sentence on different grounds. See, e.g.,State v. Morton, Cuyahoga App. No. 82095, 2003-Ohio-4063;State v. Rotarius, Cuyahoga App. No. 81555, 2003-Ohio-1526.
 {¶ 105} Accordingly, appellant's third assignment of error is sustained.
 {¶ 106} Appellant's convictions and sentences are affirmed. This case is remanded to the trial court for a resentencing hearing at which the court is instructed to state, on the record, appellant's sentence on count seven, and its findings and its reasons for the imposition of consecutive sentences.
Sweeney, J., concurs.
 Blackmon, J., concurs in judgment only.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] The terms were ordered as follows: count 2, life with parole eligibility after 20 years; counts 3 and 4, concurrent terms of seven years; counts 5 and 6, concurrent terms of six years, count 7, five years concurrently with one year on count 8, with the terms on counts 2 through 6 to be served consecutively to each other.
[3] Although these assignments of error suggest otherwise, appellant presents no arguments that pertain to any of his other convictions.
[4] The trial court's comment on "merger" presumably refers to R.C. 2941.25. Subsection (A) indicates certain crimes are allied offenses of similar import committed with a single animus for which a judgment of conviction on only one can be entered. Since, however, appellant was convicted of separate crimes against separate individuals in counts 3 and 4 and counts 5 and 6, the crimes would not be allied offenses pursuant to subsection (B). State v. Gregory (1993), 90 Ohio App.3d 124.