JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Roderick Gardner appeals from his convictions after a jury trial for felonious assault with a firearm specification and carrying a concealed weapon.
 {¶ 2} Gardner asserts his convictions are supported by neither sufficient evidence nor the weight of the evidence. He further asserts his trial counsel provided ineffective assistance by failing to challenge ballistics testimony in a timely fashion.
 {¶ 3} After a review of the record, this court cannot agree with Gardner's assertions. Therefore, his convictions are affirmed.
 {¶ 4} Gardner's convictions result from an incident that occurred in the early morning hours of February 22, 2003. Two Cleveland police officers were in their marked vehicle on routine patrol when they decided to drive by the Club Royal Bar, a drinking establishment located on Lorain Avenue near West 97th Street. The club at closing time often presented problems of fights and other nuisances, so the officers had been directed to monitor the situation.
 {¶ 5} According to their testimony at Gardner's trial, the officers arrived just as a large crowd of people was exiting. As they approached, they saw a separate group of about twenty persons, some of whom were "screaming and yelling" as if a fight had begun. Officer Thomas Walsh, who was driving, was stopping the patrol car just as a gunshot "rang out."
 {¶ 6} Officer Greg Ramser leaped from the patrol car. As the entire crowd scattered, some members of the smaller group pointed at a young man who ran toward West 97th Street, and Ramser heard the words, "He has a gun!" shouted out by several people. Ramser immediately pursued the young man, later identified as Gardner.
 {¶ 7} Walsh paused, looking for a victim, before he returned to the driver's seat in the patrol car and tracked his partner. Ramser ran after Gardner eastbound on Lorain. As Gardner reached the corner of West 97th Street, Ramser saw him cut slightly north and "throw something" down West 97th near the side of the building there before he crossed the side street and continued on Lorain.
 {¶ 8} Gardner's action apparently slowed him so that Ramser now was much closer. Realizing his chances of escape were small, Gardner complied when Ramser called out an order to stop. While Ramser detained Gardner, Walsh returned to the area his partner indicated the suspect had thrown the object. Approximately thirty feet along the side of the building, under the bushes, Walsh discovered an inexpensive handgun. It had landed in the mud there with its barrel protruding.
 {¶ 9} By the time Gardner was returned to the scene, other officers had arrived and located a spent casing near the doorway of the bar. The weapon and the casing were taken as evidence. Shortly thereafter, Walsh and Ramser were directed to go to a Parma hospital to interview a victim of the incident. The female victim had been in the crowd as the bar closed, heard the gunshot, and ran for her car. She did not realize she had been struck, possibly by a ricochet or shrapnel of the bullet, until she reached it. Rather than remaining at the scene, she drove herself to the hospital, where she was treated for wounds to her legs and her left arm.
 {¶ 10} Gardner subsequently was indicted on two counts of felonious assault, with firearm specifications, and one count of carrying a concealed weapon. His case proceeded to a jury trial. Upon the conclusion of trial, the jury acquitted Gardner of the first felonious assault charge, but found him guilty of the remaining counts.
 {¶ 11} The trial court ultimately sentenced Gardner to a prison term that totaled five years, i.e., three years on the firearm specifications to be served prior to and consecutive with concurrent terms of two years for felonious assault and one year for carrying a concealed weapon.
 {¶ 12} Gardner's initial attempt to appeal his convictions was rejected for lack of a final appealable order; the trial court, however, since then has complied with this court's directive to dismiss directly by journal entry the specifications that improperly were attached to count three of the indictment against Gardner.
 {¶ 13} Gardner presents the following three assignments of error for review:
 {¶ 14} "I. The trial court erred in denying the appellant's motion for acquital (sic) as there was insufficient evidence to support a conviction for the crimes of felonious assault and carrying a concealed weapon.
 {¶ 15} "II. The trial court erred in denying appellant's motion for acquital (sic) as the manifest weight of the evidence did not support a conviction for the crimes of felonious assault or carrying a concealed weapon.
 {¶ 16} "III. The appellant was not provided with effective assistance of counsel as trial counsel failed to timely object to ballistics testimony, to the prejudice of his client."
 {¶ 17} In his first two assignments of error, Gardner challenges both the sufficiency and the weight of the evidence presented at trial. He essentially argues that since no one actually saw him either with the gun or fire the gun in front of the bar, the trial court improperly denied his motions for acquittal, and his convictions should be reversed. Gardner's argument is unpersuasive.
 {¶ 18} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172. Thus, circumstantial evidence alone may be used to support a conviction. State v. Rankin, Cuyahoga App. No. 84801, 2005-Ohio-1506.
 {¶ 19} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin, supra at 175.
 {¶ 20} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} In this case, the evidence demonstrated that Gardner was the man upon whom Ramser and Walsh focused because he ran when he was pointed out by members of the crowd as the one with the gun. As he ran, he threw something away. When the item was recovered, it was a gun which later proved to have expelled the empty casing recovered from the pavement in front of the bar.
 {¶ 22} The officers gave a version of the events that occurred during the incident that was consistent with that of the victim. Gardner's friend Damalle Hambrick, on the other hand, provided a confusing and unlikely story about Gardner's actions that night that failed to mesh with Gardner's girlfriend's testimony.
 {¶ 23} In short, there was consistent, credible evidence that Gardner was the man who fired the gun that night in front of the Club Royal Bar and thus wounded the victim.
 {¶ 24} The trial court correctly concluded Gardner's guilt of the crime was for the jury to determine based upon the evidence presented at trial. In view of the certainty of the officers' recollections of what occurred as opposed to the defense witnesses' stories, the jury acted within its prerogative to credit the testimony of the state's witnesses.
 {¶ 25} For the foregoing reasons, Gardner's first and second assignments of error are overruled.
 {¶ 26} Gardner claims in his third assignment of error that his defense counsel provided ineffective assistance. Specifically, he complains the counsel failed to obtain information in a timely manner which would have permitted him to challenge the ballistics testimony given by Detective James Ealey. The record does not support Gardner's claim.
 {¶ 27} The claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, paragraph three of the syllabus.
 {¶ 28} The burden is on appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. The decision to object to or to call a witness at trial is a matter of strategy. State v. Hunt (1984), 20 Ohio App.3d 310,312.
 {¶ 29} The record reflects defense counsel was aware the state had evidence that a weapon and a casing were found on the night of the incident that tied his client to the crime. The prosecutor, however, neglected to comply with discovery rules by failing to inform defense counsel of the name of the witness who would present ballistics testimony. When he was called as a witness, Ealey's testimony demonstrated the spent casing recovered from the pavement in front of the bar had been fired from the gun found under the bushes near the building on East 97th Street.
 {¶ 30} Under these circumstances, defense counsel properly informed the trial court of the prosecutor's lapse. Nevertheless, the trial court chose to permit Ealey's testimony. Although counsel objected, since there was nothing except the testimony of the other two officers, who were partners and clearly biased in each other's favor, to tie the gun to Gardner, counsel chose not to make a great effort to undermine the connection between the casing and the gun. Instead, counsel acquiesced to the trial court's decision and focused on suggesting the police investigation of the crime was less than thorough.
 {¶ 31} Counsel accomplished this by pointing out through cross-examination of the state's witnesses the following facts: Ramser neither saw Gardner with the gun nor kept Gardner in sight during every moment of the chase; Walsh did not bother to try to preserve any fingerprints that might exist on the gun; no one performed any gunshot residue tests on Gardner; no one stated Gardner had a gun when the shot was fired; no one saw Gardner fire the gun; and, finally, Gardner was not the only person in the crowd who ran when the shot was fired. This was a reasonable defense. State v. Lyman, Cuyahoga App. No. 83097, 2005-Ohio-1454.
 {¶ 32} The record in this case with regard to trial counsel's actions, therefore, fails to demonstrate his performance fell below an objective standard of reasonableness, Gardner's third assignment of error also is overruled.
 {¶ 33} Gardner's convictions are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J. and Calabrese, Jr., J. Concur.