{¶ 1} Defendant-appellant Donta Smith appeals from his convictions after a jury found him guilty of rape and kidnapping.
 {¶ 2} Smith presents three assignments of error. He argues: 1) his trial counsel provided ineffective assistance, in that his efforts displayed a "lack of diligence"; 2) his convictions were against the manifest weight of the evidence; and, 3) the trial court erred in limiting his cross-examination of the victim regarding her conversation with her father after she made her disclosure of sexual abuse.
 {¶ 3} After reviewing the record, this court finds none of Smith's arguments persuasive. Consequently, his convictions are affirmed.
 {¶ 4} Smith's convictions result from his association with the victim's family. The victim, KM, [1] testified that she was born on June 11, 1989, and that Smith began dating one of her older sisters when KM was "about 10 or 11" years old. Smith was approximately 17 years old at the time. Smith seemed "kind of fun" to KM.
 {¶ 5} In late 2001, when the family moved to another residence, Smith moved in with them. He and KM's sister shared a bedroom. KM testified that "a couple months" after she began a new school in February 2002, when she went *Page 4 
to her own room to change clothes, Smith would enter, appear surprised, and quickly leave again, as if his actions were "an accident." However, her perceptions began to change when he additionally twice "kissed [her] on [her] mouth."
 {¶ 6} KM testified that shortly after the occasion of the second kiss, she awoke one night to find Smith sitting on her bed placing his fingers sliding up her leg under her gown. She told him to stop because she "didn't like the way he was touching" her. She had to insist before he left. KM testified this occurred once more during the school year.
 {¶ 7} KM testified that after her summer school vacation began, Smith invited her into the bedroom he shared with her sister to watch a video with him. KM "thought it was his way of saying he was sorry" for his actions toward her, so she followed him into the room and sat on the bed. When "he put the movie on, it was a porno."
 {¶ 8} KM testified that she attempted to leave, but Smith "pushed" her back onto the bed and "held [her] down and started kissing and touching" her. Although she tried to get up and begged him to "stop," he held her down with his arm across her shoulders, pulled down her pants, and "put the head of his penis" partially into her vagina. Her struggles to escape, however, apparently *Page 5 
"annoyed" him enough that he eventually "moved away" and permitted her to leave.
 {¶ 9} KM testified she kept what had occurred to herself for her sister's sake; her sister married Smith in August 2003. KM testified that she eventually told one of her girlfriends in 2006, and that she ultimately disclosed Smith's abuse of her to her mother in January 2007. Her mother immediately "called the police and she called [KM's] dad."
 {¶ 10} The police investigation of KM's disclosure led to Smith's indictment in this case. He was charged with three counts of rape, one count of attempted rape, one count of gross sexual imposition, and four counts of kidnapping.
 {¶ 11} Smith's case proceeded to a jury trial. After considering the testimony of KM, her mother, the police detective, and of Smith and his wife, the jury found Smith guilty of one count of rape and one count of kidnapping; Smith was acquitted of the other charges. The trial court thereafter sentenced him to consecutive prison terms of ten and three years, respectively.
 {¶ 12} Smith appeals with three assignments of error.
"I. Due to numerous shortcomings in trial counsel's performance,appellant received ineffective assistance of counsel.
 "II. Appellant's conviction [sic] is against the manifest weight ofthe evidence. *Page 6 
 "III. The trial court erred in not allowing testimony concerning thealleged victim's conversation with her father."
 {¶ 13} Smith argues that his trial counsel rendered ineffective assistance by failing to more closely question either the state's or his own witnesses on matters Smith considers would have been crucial to his defense. Smith asserts that had the witnesses been pressed, they would have presented testimony showing KM had a motive for manufacturing allegations against him. This court disagrees.
 {¶ 14} Smith's claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph three of the syllabus.
 {¶ 15} The burden is on appellant to prove ineffectiveness of counsel.State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. *Page 7 
 {¶ 16} The record in this case with regard to counsel's actions demonstrates counsel's performance fell within objectively reasonable standards of representation. First, it must be noted that decisions regarding the extent of either examination or cross-examination of witnesses certainly falls within the realm of trial strategy. See, e.g.,State v. Gardner, Cuyahoga App. No. 85275, 2005-Ohio-3709, ¶ 28. Counsel is not required to present a defense beyond raising the possibility of reasonable doubt. Id., ¶ 31.
 {¶ 17} Second, the record reflects counsel came well-prepared to the trial, and cross-examined KM extensively, especially with respect to inconsistencies between her written statement and her testimony and her recollection of the timing of the relevant events. Counsel subsequently used these inconsistencies and discrepancies in his questions of the remaining witnesses. Obviously, the thrust of the defense was to cast doubt on KM's reliability.
 {¶ 18} Counsel cannot at this juncture be faulted for choosing this strategy, since it proved quite successful. After all, the jury acquitted Smith of seven of the nine counts presented against him.
 {¶ 19} Therefore, Smith cannot sustain his burden to show counsel provided constitutionally ineffective assistance. Bradley, supra. His first assignment of error, accordingly, is overruled. *Page 8 
 {¶ 20} Smith next argues his conviction for rape is not sustained by the manifest weight of the evidence.[2] He contends that KM's testimony contained so many inconsistencies that her account of the sexual assault in his bedroom during the summer 2002 was too incredible to believe.
 {¶ 21} With regard to reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} This court must be mindful, however, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 23} According to testimony, KM had just turned 13 years old in June 2002. She lived in a household that included Smith and her older sister, who was "very protective of" Smith. By that time, KM had known Smith for approximately two years. *Page 9 
 {¶ 24} The evidence demonstrated that, besides being aware of how her elder sister felt about Smith, KM generally liked him. Thus, KM believed his invitation on that occasion was well-intentioned; she thought it was his way of making amends for his inappropriate behavior. It was only after she was sitting on his bed and off-balance that Smith was able to pin her down and commit the rape. KM explained the inconsistencies in recounting dates that existed between her trial testimony and her written statement. Moreover, her testimony was corroborated in many respects by her mother.
 {¶ 25} The defense witnesses, Smith and KM's sister, who was by now his wife, presented testimony that suggested KM's recollections of the incidents occurring prior to her thirteenth birthday may have been overstated. This accounts for the jury's decision to acquit Smith of those particular counts.
 {¶ 26} On the other hand, their testimony provided no motive for KM to lie. Smith's wife clearly did not want to believe her sister and was biased in his favor, and Smith himself provided equivocal answers on cross-examination. The jury acted within its prerogative in determining under these circumstances that KM provided a truthful account of the summertime incident, and that Smith was guilty of rape. State v.Whitfield, Cuyahoga App. No. 89570, 2008-Ohio-1090.
 {¶ 27} Accordingly, Smith's second assignment of error also is overruled. *Page 10 
 {¶ 28} Smith argues in his third assignment of error that the trial court erred in limiting his cross-examination of KM. He contends he should have been permitted to inquire into the particulars of her conversation with her father after her disclosure. He further contends that the trial court provided an improper reason for limiting his inquiry. While his second contention has merit, his first does not; thus, his argument lacks persuasiveness.
 {¶ 29} A trial court's decision whether to admit or to exclude evidence is a matter committed to its discretion. State v. Sage (1987),31 Ohio St.3d 173. A mere error of law does not constitute an abuse of discretion. State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 30} Evid. R. 611(B) permits cross-examination "on all * * * matters affecting credibility." The record reflects KM stated that, after she made her disclosure to her mother, her mother called KM's father. On cross-examination, defense counsel asked KM if she had "ever discussed" with her father what she had disclosed to her mother. KM answered, "No." The trial court at that point sustained the state's objection to any further cross-examination with respect to KM's answer. KM's mother subsequently testified, however, that after KM's father arrived, he spoke with KM for some time.
 {¶ 31} Defense counsel stated for the record that, during KM's testimony, he had "wanted to inquire with questions regarding the conversation [she had *Page 11 
with her father]." The trial court explained it had foreclosed further inquiry on the subject because "there was no testimony on [KM's] direct [examination] as to any conversations that were had or not had with her father." Thus, according to the trial court's analysis, KM's answers on cross-examination had to be limited to what the state brought out on direct.
 {¶ 32} Although the trial court's analysis was flawed, Evid. R. 611(B) limits cross-examination to matters that are "relevant." Defense counsel stated that the only reason he sought to pursue the inquiry was because he wanted the jury to be aware that KM's father was "a convicted rapist." The issue for the jury, however, was whether Smith committed the offenses in 2002, not whether her father was a "convicted rapist." Thus, KM's father's criminal record was irrelevant.
 {¶ 33} Since the trial court did not err in excluding this evidence, the trial court's decision to foreclose further cross-examination cannot be deemed an abuse of discretion. State v. Gray, Cuyahoga App. No. 83097, 2004-Ohio-1454, ¶ 47.
 {¶ 34} Consequently, Smith's third assignment of error also is overruled.
 {¶ 35} Smith's convictions are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 12 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] Pursuant to this court's policy, the victim of a sexually oriented offense is granted privacy; therefore, references to her and her family are shortened to initials.
[2] A review of his argument demonstrates Smith presents no challenge to his kidnapping conviction. *Page 1