[Cite as *State v. Hilliard*, 2017-Ohio-2952.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160263 |
| | | TRIAL NO. B-150874 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| GARRISON HILLIARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 24, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

**MILLER, Judge.**

{¶1} Garrison Hilliard admitted to shooting his niece's boyfriend in the face with a flare gun modified to shoot .410 shotgun shells. Hilliard and members of his extended family shared a large property with two houses. Hilliard lived in the main house with his mother and his niece Samantha's children. Samantha lived in the second house—which the parties call the "pink house"—with her brother and her boyfriend, Andrew Davis, the victim. After a jury trial, Hilliard was found guilty of one count of felonious assault under R.C. 2903.11(A)(2) with two firearm specifications and an additional count of felonious assault under R.C. 2903.11(A)(1). He was also convicted of unlawful possession of dangerous ordnance with one firearm specification, which is not the subject of this appeal. The trial court sentenced him to an aggregate term of five years.

## I.     Manifest Weight

{¶2} In his first assignment of error, Hilliard argues that his convictions are against the manifest weight of the evidence because the evidence established that he acted in self-defense. A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Our duty is to review the entire record, weigh the evidence, consider the credibility of the witnesses, and resolve whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶3} Self-defense is an affirmative defense that legally excuses admitted criminal conduct. *State v. Poole,* 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). The accused bears the burden of proving by a preponderance of the evidence (1) that he was not at fault in creating the violent situation, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was

the force used, and (3) that he did not violate a duty to retreat or to avoid the danger. R.C. 2901.05(A); *State v. Robbins,* 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

{¶4} Under R.C. 2901.05(B)(1), "a person is presumed to have acted in self defense * * * when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence * * * occupied by the person using the defensive force." But that presumption does not apply "if the person against whom the defensive force is used has a right to be in, or is a lawful resident of, the residence." R.C. 2901.05(B)(2)(a).

{¶5} Here, the evidence relating to the elements of self-defense and the Castle Doctrine presumption was contradictory. Samantha testified that she was at work that night, but she was having trouble getting her grandmother—Hilliard's mother—on the phone to check on her children. She called Davis and asked him to go see what was happening at the main house and to check on their children. Davis and Samantha both testified that Davis had a key to that house, they ate and showered there, and their children lived there.

{¶6} Hilliard testified that he was in his home with his mother when Davis entered without permission. He stated that Davis came into the house and called him names. Hilliard told Davis to leave. The two began to struggle, after which Hilliard went back to his room. When he heard his mother tell Davis to leave, Hilliard returned and told Davis again to leave. Davis grabbed him. At which point, Hilliard admitted that he returned to his room, grabbed the flare gun and a .410 shotgun shell. When he walked

back out to where Davis was, Davis began shaking Hilliard, and Hilliard aimed over Davis's shoulder and fired.

{¶7} Davis tells another story. Davis testified that as he approached the house, he heard Hilliard screaming at his mother, calling her names, and saying "get the fuck out, bitch." From outside, Davis saw Hilliard grab his mother's arm with both of his hands. Davis entered the house and told Hilliard to go outside. Davis testified that he was trying to diffuse the situation because his children were in the house and to protect Hilliard's mother. Davis claims that Hilliard put his hands on Davis as if to remove him from the house. Next, Hilliard went to his bedroom and Davis went to the kitchen to calm down. Davis was in the kitchen for 10 to 12 seconds, then he heard Hilliard's mother scream, "Gary, stop! No Gary, stop!" At that point, Hilliard shot Davis in the face.

{¶8} Hilliard's mother testified that Davis came in while she was putting one of the children to bed. She stated that she came out and had to separate Hilliard and Davis. She told Davis to "go on up to the pink house" and she would take care of Hilliard. Then, when she went to her bedroom, she heard a gunshot. She stated that when she saw Davis was bleeding, she asked Hilliard, "What have you done?" Hilliard responded that he told Davis to leave and he did not go, so he shot him.

{¶9} The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The jurors were free to believe or disbelieve any of the witness testimony, and they were entitled to believe that Hilliard did not act in self-defense. Here, a jury could have believed Davis's version of events and convicted Hilliard accordingly. Hilliard admitted to shooting Davis after returning to his bedroom to retrieve and load the weapon. There was evidence that Davis was privileged to be in the main house and that

4

Hilliard was not authorized to exclude Davis. Accordingly, the jury could reasonably have concluded that Davis did not prove self-defense and the Castle Doctrine was inapplicable. After a review of the record, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. As a result, we overrule Hilliard's first assignment of error.

## II. Jury Instructions

{¶10} In his second assignment of error, Hilliard contends he was denied due process because the trial court failed to provide complete and unambiguous jury instructions. Hilliard admits he did not object to the jury instructions. As a result, he has forfeited all but plain error. *See* Crim.R. 30(A); Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23. To succeed under a plain-error review, Hilliard must demonstrate that the error affected the outcome of the trial. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Hilliard has not established that the jury instructions were prejudicial.

{¶11} Hilliard argues that the trial court's jury instructions were incomplete, ambiguous, and confusing. First, he complains that the trial court did not define the terms "dwelling" and "residence." The Ohio Jury Instructions define a "dwelling" as a building of any kind that has a roof and is designed to lodge people at night, regardless of whether the building is temporary or permanent or is mobile or immobile. 2 *Ohio Jury Instructions*, CR Section 421.19 (Rev. Oct. 11, 2008); *see* R.C. 2901.05(D)(2). "Residence" is defined as "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." 2 *Ohio Jury Instructions*, CR Section 421.24 (Rev. Oct. 20, 2012); *see* R.C. 2901.05(D)(3). The fact that the altercation took place in Hilliard's residence was never disputed. Hilliard, his niece, his nephew, his mother,

Detective Joseph Coombs, and Davis all testified that Hilliard lived in the home. Accordingly, providing the definitions to the jury was unnecessary.

{¶12}   Hilliard further argues that the trial court erred when it refused to give an instruction that Hilliard was entitled to establish that he acted in self-defense, regardless of whether the jury found the Castle Doctrine presumption applied or the state rebutted the presumption.  However, the portion of the record cited to support this argument, does not contain a request by Hilliard's counsel to give this instruction.  Nor does it contain a refusal by the court to give such an instruction.  Further, although adding the instruction may have provided clarity, the instructions as given accurately stated the law.  The instruction properly stated the self-defense affirmative defense and that the Castle Doctrine provides an exception to the duty to retreat.  The instruction did not indicate that the Castle Doctrine meant that Hilliard could not establish that he retreated.

{¶13}   Hilliard also complains that the trial court failed to instruct the jury that the state can rebut the Castle Doctrine presumption by a preponderance of the evidence. When Hilliard's counsel brought up the Castle Doctrine presumption and the state's burden to rebut, the court asked counsel if he had located an Ohio Jury Instruction on that topic.  Hilliard's counsel indicated that he had not.  He then suggested the statutory language of R.C. 2901.05(B)(1)-(3), which sets forth the Castle Doctrine presumption, exceptions to the presumption, and that the presumption is rebuttable.  At that point the state objected.  The prosecutor argued that there had been no evidence that Davis was unlawfully in the residence.  Then, the court stated that it would consider adding that instruction at the end of the case.  The jury was instructed on the Castle Doctrine as follows:

6

A person is presumed to have acted in self defense when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

This instruction is R.C. 2901.05(B)(1) verbatim. The jury was not instructed on the exceptions to the presumption. However, stating the exceptions would not benefit Hilliard, while their omission arguably would. As a result, their omission, if error, would amount to harmless error. *See* Crim.R. 52(A).

{¶14} After a review of the instructions, we are convinced that the trial court properly instructed the jury on the elements of self-defense, the Castle Doctrine presumption, and Hilliard's burden of proof. In fact, the trial court's self-defense instructions were almost verbatim from the Ohio Jury Instructions. When read together, the jury instructions were complete and unambiguous. *See State v. Thompson*, 33 Ohio St.3d 1, 12-13, 514 N.E.2d 407 (1987). We overrule Hilliard's second assignment of error.

### III. Ineffective Assistance

{¶15} In his third assignment of error, Hilliard claims he was denied the effective assistance of counsel. He asserts that his trial counsel was constitutionally ineffective for failing to include essential definitions and substantive instructions regarding which party carried the burden of proof, when and if the burden shifted, and the nature of the burden. To demonstrate ineffective assistance of counsel, Hilliard must show that his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by his counsel's deficient

7

performance. *See Strickland v. Washington,* 466 U.S. 668, 686-687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶16}    We have already explained that the jury instructions were not erroneous. Hilliard's counsel was not deficient for failing to object to jury instructions that properly stated the law. *See State v. Wilson,* 3d Dist. Union No. 14-06-19, 2006-Ohio-6930, ¶ 52. Further, the record demonstrates that Hilliard's trial counsel extensively reviewed and discussed the proposed jury instructions with the court and the prosecutor. He made numerous objections with full, well-reasoned arguments and suggested numerous alterations. We overrule Hilliard's third assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.