[Cite as *State v. Allen*, 2023-Ohio-3739.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                      |
|------------------------|---|------------------------------|
| STATE OF OHIO          | : | Hon. W. Scott Gwin, P.J.     |
|                        | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee     | : | Hon. Andrew J. King, J.      |
|                        | : |                              |
| -vs-                   | : |                              |
|                        | : | Case No. 2022 CA 00151       |
| AVEN ALLEN             | : |                              |
|                        | : |                              |
| Defendant-Appellant    | : | OPINION                      |


CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2022-CR-1256


JUDGMENT:      Affirmed in part; Reversed in part, Remanded


DATE OF JUDGMENT ENTRY:      October 12, 2023


APPEARANCES:


For - Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
BY: VICKI L. DESANTIS
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702

For - Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue N.W.
Suite 808
Canton, OH 44702

*Gwin, P.J.*

{¶1}    Defendant-appellant Aven Glen Allen ["Allen"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    On June 22, 2022, the Stark County Grand Jury returned an Indictment charging Allen with one count of burglary in violation of R.C. 2911.12(A)(2)/(D), a felony of the second degree; and one count of grand theft in violation of R.C. 2913.02(A)(1)(A)(3)/(B)(2), a felony of the fourth degree.

{¶3}    On the evening of January 1, 2022, Jackson Township Police responded to a burglary in progress call. The owner of the home, P.N., was at his second home in Florida with his wife. P.N. received a motion detection notification on his cell phone from his surveillance camera. P.N. could see an individual in his house on the live feed from the camera. He watched on his phone as he saw a tall lean person with a mask going towards the bathroom behind the hutch where a safe was located. The intruder walked straight into the room without hesitation appearing to know what he was seeking. The intruder went through jewelry boxes, as well as boxes and gift bags from P.N.'s daughter's recent wedding. P.N. watched the live feed as the intruder went through different rooms in his house including the kitchen and bedrooms. The intruder took a jewelry box from the bedroom. P.N. watched as the intruder left through the basement door with four heavy bags on each arm. The door led outside to the golf course. The homeowner went on to describe that empty boxes were left outside of the safe, some jewelry was seen strewn about, but most things were in the safe and undisturbed. P.N. believed the break-in was

well planned and the person "knew what he was doing." 1T. at 267; 290. Wires were cut on the exterior cameras and the cameras inside were not recording.

{¶4}     P.N. immediately called 911 in Florida, but then had to call security at the housing complex to inform them of an intruder and instruct the guard to call Jackson Township police. P.N. explained his phone had malfunctioned and did not record the motion detection notification or the individual inside his home.

{¶5}     When officers arrived, it appeared that the residence had a broken window in a garage man door, with what appeared to be forced entry at the door to the inside of the residence. Police observed that the locks had been "busted out." Jewelry was found disturbed and around a small room in the basement. There, officers found a safe that had been disturbed and several jewelry boxes. Officers did not find anyone inside the residence.

{¶6}     P.N. returned home the following day to find the damage to his window and doors. He discovered that the intruder had cut all the wires to the ADT security cameras on the outside of the home and some of that equipment was taken. In addition, P.N. found a crowbar at the scene. P.N. also confirmed that tire tracks discovered by the police near the back of the house were his tire tracks from checking the camera system before he left for Florida.

{¶7}     P.N. testified that only he and his wife lived at the home. In addition, P.N. testified he and his wife were away in Florida and had been there for at least two weeks before the break-in. P.N. testified only his close family knew he was in Florida.

{¶8}     P.N. testified that he had a handyman who had been working for him for about a year. The handyman had a crew that helped work on the garage when it needed

repairs. The handyman was in and out of almost every room in the house, working on small and large projects as the homeowner needed things done. The handyman was familiar with the bathroom where the safe was located. The handyman had been in the home unsupervised while doing repairs. The handyman was the first suspect P.N. suggested to the police. P.N. also had two cleaning ladies that started working at the home just three months prior to the break-in.

{¶9} T. K., one of the grounds crew members at the housing allotment and golf course where P.N.'s home was located, testified that while working on January 5, 2023, she noticed some objects on the golf course in the middle of the fairway around the tenth hole. She observed a purse and wallet, a cell phone, a flashlight, and a glass cutter. Before taking the items to the guard shack, as was standard procedure when finding lost or discarded items on the golf course, she opened the wallet inside the purse and discovered the owner was P.N.'s wife. P.N.'s home was located directly behind the tenth hole. T.K. and another grounds crew member went to P.N.'s home and rang the doorbell. P.N. answered the door, instructed her to place the items on the porch, and he took their names and numbers. P.N. then called the police.

{¶10} Detective Andrew Speight of the Jackson Township Police Department identified the purse, cell phone, and flashlight with a glass cutter as having been recovered by T.K. He explained that because several people had touched these items, the police gathered a DNA swab from each of those people. However, DNA testing revealed only Allen's DNA present on the flashlight. Detective Speight testified that investigators checked door handles, doors, shelves, cupboards in the house for

fingerprints, but found none. When Detective Speight turned on the cell phone, Allen's name and address came up on the screen.

**{¶11}** Detective Speight obtained a warrant to search the contents of the cell phone. During the cell phone extraction, the detective testified that aerial images of P.N.'s home, and a picture of P.N. and his daughter, were found on Allen's phone. The data showed the images were taken on December 30, 2021 prior to the burglary.

**{¶12}** Detective Speight located Allen on March 21, 2022. Allen agreed to give the detective a DNA sample. During Detective Speight's interview with Allen, Allen admitted the cell phone found on the golf course was his phone. Allen claimed he reported his phone lost or stolen to Verizon on New Year's Day. However, upon checking Allen's story with Verizon, Detective Speight confirmed Allen had not reported his phone as lost or stolen. Allen admitted that the aerial images on his phone were ones that he downloaded.

**{¶13}** Lindsey Deetz, an expert in the field of DNA and forensic science, from the Bureau of Criminal Identification and Investigation, tested the evidence she received in this case, including the flashlight found on the golf course. To a reasonable degree of scientific certainty, Ms. Deetz testified that only Allen's DNA was found on the flashlight, with odds of a match to one in one trillion. Other items sent to BCI, a purse, a glass cutter, and a pry bar, did not contain enough material to produce a match to anyone.

**{¶14}** At the conclusion of the evidence and after instructions by the trial judge, the jury found Allen guilty of burglary and grand theft, but did not find the state met its burden as to the additional finding that the property stolen was valued at more than $7,500.00, but less than $150,000.00. Therefore, the trial court entered a judgment of

conviction for burglary and theft, a misdemeanor of the first degree, merged the theft into the burglary count, and sentenced Allen to an indeterminate sentence of six to nine years.

*Assignments of Error*

**{¶15}** "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶16}** "II. APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ABUSED ITS DISCRETION AND DID NOT DECLARE A MISTRIAL.

**{¶17}** "III. THE REAGAN TOKES ACT, AND SUBSEQUENT VERSION(S) OF THE OHIO REVISED CODE ENACTING THE SAME IMPOSING SENTENCES FOR FIRST- AND SECOND-DEGREE QUALIFYING FELONIES VIOLATE THE UNITED STATES AND OHIO CONSTITUTIONS."

I.

**{¶18}** Allen's First Assignment of Error challenges the sufficiency and manifest weight of the evidence that was presented at trial and which resulted in the jury's verdict of guilty.

**Standard of Appellate Review– Sufficiency of the Evidence.**

**{¶19}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt[1]. *Alleyne v. United States*, 570

---

[1] An accused's not-guilty plea preserves the right to object to the alleged insufficiency of the evidence because the state must prove each element by proof beyond a reasonable doubt. *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595, 599(1992); *State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163, 1177 (2001) *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979).

U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶20} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421,

430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**:  *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Allen was guilty beyond a reasonable doubt of Burglary in violation of R.C. 2911.12(A)(2)/(D)*

**Identity of the perpetrator**

{¶21}  Allen contends that the state failed to prove beyond a reasonable doubt that he was the person who invaded P.N.'s home. [Appellant's brief at 6].

{¶22}  There is no dispute in the case at bar that someone broke into P.N.'s home. Allen's main argument is that there was insufficient evidence to identify him as the perpetrator of that crime.

{¶23}  At trial, the state presented evidence that the grounds crew found Allen's cell phone, the purse and wallet belonging to P.N.'s wife and a flashlight near the tenth hole of the golf course. The tenth hole is directly behind P.N.'s home. The state further presented evidence that, contrary to Allen's claim, he did not report the cell phone as stolen. The items were found within days of the burglary. Evidence was presented that Allen's DNA was recovered from the flashlight. Aerial photographs of P.N.'s home and photos of P.N. and his daughter were discovered on Allen's cell phone. P.N. testified to the damage to his home and the items missing from the home after the burglary.

{¶24}  Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. Circumstantial evidence inherently possesses the same

probative value as direct evidence. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990); *see also State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001); *Hinerman v. Grill on Twenty First, L.L.C.*, 5th Dist. Licking No. 2020 CA 00054, 2021-Ohio-859, 2021 WL 1045729, ¶ 88. Moreover, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

**{¶25}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Allen was the perpetrator. We hold, therefore, that the state met its burden of production regarding the identity of Allen as the perpetrator and, accordingly, there was sufficient evidence to convict Allen.

**Person present or likely to be present**

**{¶26}** Allen also argues the state failed to prove beyond a reasonable doubt that it was likely a person would be in the home at the time of the intrusion. [Appellant's brief at 5-6].

**{¶27}** Allen was convicted of Burglary. R.C. 2911.12, provides, in relevant part,

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an

accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

* * *

{¶28} R.C. 2902.01 defines "occupied structure,"

(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

{¶29} An occupied structure has four alternate definitions under R.C. 2909.01(C)(1)-(4). The type of burglary in R.C. 2911.12(A)(2) essentially requires the occupied structure to meet both subdivisions (2) and (4) of R.C. 2909.01(C). *State v. Thomas*, 7th Dist. No. 18 MA 0132, 2021-Ohio-2350, 174 N.E.3d 467, n.3. In the case at bar Allen does not dispute that the home meets the definition of an "occupied structure" because P.N. and his wife maintained it as their residence.

{¶30} Pursuant to R.C. 2911.11(A)(2), the state was also required to present evidence establishing that someone other than Allen was present or likely to be present at the time Allen trespassed in P.N.'s home.

{¶31} It is not the knowledge of the defendant concerning whether he or she believed someone was home which is significant, but rather the probability or improbability of the actual presence or likely presence, which exists at the time of the offense as determined by all the surrounding facts. *State v. Hibbard,* 12th Dist. Butler No. CA2022-09-086, 2023-Ohio-983, ¶13; *State v. Goins,* 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶19; *State v. Smith,* 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶36; *State v. Durham,* 49 Ohio App.2d 231, 239, 360 N.E.2d 743(1st Dist. 1976). In other words, the issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely that someone would be there. Id.

{¶32} Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. *State v. Pennington*, 12th Dist. Warren. No. CA2006-11-136, 2007-Ohio-6572, ¶ 29; *State v. Eberhardt,* 5th Dist. Richland No. 2019CA0111, 2020-Ohio-4124, ¶26, *State v. Broyles,* 5th Dist. Richland No. 2009 CA 0072, 2010-Ohio-1837, ¶29-33; *State v. Stevens,* 5th Dist. Muskingum No. 93-30, 1994 WL 171808. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. Id.

{¶33} The fact that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present. *State v. Fowler*, 4 Ohio St.3d 16, 18–19, 445 N.E.2d 1119 (1983); *State v. Hudson,* 2nd

Dist. Montgomery No. 27561, 2018-Ohio-423, 106 N.E.3d 205, ¶18; *State v. Gerde,* 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶24; *State v. Broyles,* 5th Dist. Richland No. 2009 CA 0072, 2010-Ohio-1837, ¶32. Likewise, "[t]he fact that a dwelling is used as a residence is not, standing alone, sufficient to show that someone is 'likely to be present' at the time of a burglary." *State v. Jackson,* 188 Ohio App.3d 803, 2010-Ohio-1846, ¶ 9, 937 N.E.2d 120 (4th Dist.); *State v. Hibbard,* 12th Dist. Butler No. CA2022-09-086, 2023-Ohio-983, ¶15*; State v. Petit,* 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶23. Instead, the state must adduce specific evidence that a person was present or likely to be present. *State v. Pennington*, 12th Dist. Warren No. CA2006-11-136, 2007-Ohio-6572, ¶ 28; *State v. Gerde*, 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶ 24; *Broyles,* ¶33.

{¶34} Several Ohio appellate courts, including this Court, have reversed burglary convictions that involved temporarily absent occupants (usually for employment) and the prosecutor failed to meet its burden of proving that a person was present or was likely to be present when the defendant broke into the residence. *See, State v. James,* 5th Dist. Delaware No. 11 CAA 05 0045, 2012-Ohio-966, ¶18; *Greer v. United States,* 938 F.3d 766, 775-776 (6th Cir. 2019); *State v. Rothrock*, 8th Dist. No. 93602, 2010–Ohio–4102, *State v. Jackson*, 188 Ohio App.3d 803, 2010–Ohio–1846, 937 N.E.2d 120 (4th Dist.); *State v. Broyles*, 5th Dist. No. 2009 CA 0072, 2010–Ohio–1837; *State v. Mitchell*, 183 Ohio App.3d 254, 2009–Ohio–3393, 916 N.E.2d 876 (6th Dist.); *State v. McCoy*, 10th Dist. No. 07AP–769, 2008–Ohio–3293; *State v. Miller*, 2nd Dist. No. 2006 CA 98, 2007–Ohio–2361.

**{¶35}** The presence requirement is highly fact-intensive and is likely to turn on the unique circumstances in a given case. *See, e.g., State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336, 1337 (1977) ("Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11."); *Jackson*, 937 N.E.2d at 123 ("[W]hen an occupant is absent for extended periods of time, a person may still be 'likely to be present' under the statute if the occupant gave a key to a neighbor or to someone else and asked them to check on the property."); *State v. Tippie*, No. 91 CA 1511, 1993 WL 148775, at *8 (Ohio Ct. App. May 3, 1993). "When a resident is on vacation when the burglary occurs, courts have looked at the schedule and intention of the resident, specifically circumstances demonstrating whether it was likely that the resident could abruptly return, or another person could have been present." *State v. Smith*, 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶ 37.

**{¶36}** P.N. and his wife were not present because they had been in Florida for at least two weeks. No evidence was presented that P.N. or his wife commuted between the Ohio home and Florida home on a daily, weekly, or monthly basis. It is clear from the evidence that no other person was inside, immediately outside, or contemporaneously entering P.N.'s home at the time Allen was trespassing therein.

**{¶37}** In the case at bar, no evidence was presented that P.N. or his wife gave a key to the home to a relative or a neighbor, or asked someone to watch the home in their absence. P.N.'s daughter lives in Pennsylvania and no evidence was presented that she

returned to P.N.'s home on a daily, weekly, or monthly basis. The record contains no evidence that the housecleaners, handyman or lawnmower were asked to do work at the home in P.N.'s absence, or that any of them had permission to be on the premises.

**{¶38}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that the circumstances do not justify a logical expectation that a person was likely to be present at P.N.'s home at the time of the trespass.

**{¶39}** While there was insufficient evidence to support Allen's guilt of a second-degree burglary, R.C. 2911.12(A)(3), which defines a third-degree felony burglary offense, does not include the element of presence, or likely presence. *State v. Brown*, 10th Dist. Franklin No. 05AP-601, 2006-Ohio-2307, ¶ 18. "Burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2) because it contains all the elements of R.C. 2911.12(A)(2) except the presence or likely presence of another." *State v. Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, ¶ 45, *citing State v. Butler,* 8th Dist. Cuyahoga No. 97649, 2012-Ohio-4152, ¶ 18. *See also State v. Ficklin*, 8th Dist. Cuyahoga No. 92228, 2009-Ohio-6103, ¶ 6 (burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2). The Ohio Supreme Court has held that "[w]hen there is insufficient evidence to sustain a conviction for one crime, but sufficient evidence to sustain a lesser included offense of that crime, it is appropriate to modify the verdict accordingly, without ordering a new trial." *State v. Smith*, 167 Ohio St.3d 220, 2022-Ohio-269, 191 N.E.3d 418, ¶ 12; *Accord, State v. Bertram,* Slip Op. No. 2023-Ohio-1456, 2023 WL 3213491.

**{¶40}** Allen's First Assignment of Error is sustained as it pertains to the sufficiency of the evidence and moot as it pertains to the manifest weight of the evidence.

## II.

**{¶41}** In his Second Assignment of Error, Allen contends that the trial court erred in not granting a mistrial when Officer Speight testified that Allen was taken into custody by another agency.

### Standard of Appellate Review

**{¶42}** "Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). In reviewing a claim that a mistrial should have been granted, the Ohio Supreme Court has noted "[t]his court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Shaffer*, 5th Dist. Richland No. 2003-CA-0108, 2004-Ohio-3717, ¶18 *quoting* [State *v.] Widner* [68 Ohio St.2d 188, 429 N.E.2d 1065(1981)]. *See, also, Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974(1949).

**{¶43}** An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship*

*of S.H.,* 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54

**Issue for Appellate Review:** *Whether the trial court abused its discretion by denying Allen's motion for a mistrial.*

{¶44}  Allen notes that his counsel filed a Motion in Limine, specifically addressing testimony regarding any criminal conduct, and specified "any comment, discussion, records, testimony, or any other material ...pertaining to any other charges, convictions, cases, allegations, theories of unsolved case, or other allegations of criminal conduct..." He argues in spite of this, a veteran police officer testified concerning his contact with Allen in order to request a DNA sample. The officer testified that Allen had been taken into custody by another agency for an unrelated incident. 2T. at 35.

{¶45}  In the case at bar, the trial court immediately gave the jury a curative instruction. "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313( 1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163, *approving and following State v. Fox*, 133 Ohio St. 154, 12 N.E.2d 413( 1938); *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566(1929). Where an improper reference to a defendant's criminal history is "fleeting and * * * promptly followed by a curative instruction," the trial court does not abuse its discretion by denying the defendant's motion for a mistrial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 174-175, *quoting State v. Garner*, 74 Ohio St.3d 49, 59 (1995).

**{¶46}** We conclude that the trial court did not abuse its discretion by denying Allen's motion for a mistrial.

**{¶47}** Allen's Second Assignment of Error is overruled.

III.

**{¶48}** In his Third Assignment of Error, Allen argues his indefinite prison terms imposed pursuant to the Reagan Tokes Act, codified in R.C. 2967.271, violates his right to a jury trial, the doctrine of separation of powers, and due process principals under the federal and state constitutions.

**{¶49}** In *State v. Hacker,* Slip Op. No. 2023-Ohio-2535, 2023 WL 4750237, the Ohio Supreme Court held: 1). R.C. 2967.271 does not violate the separation of powers doctrine; 2). R.C. 2967.271 does not violate a defendant's right to a jury trial; 3). R.C. 2967.271 is not void for vagueness, and 4). R.C. 2967.271 does not violate a defendant's procedural due process rights.

**{¶50}** Allen's Third Assignment of Error is overruled.

**Conclusion**

**{¶51}** We reverse the judgment of the trial court, vacate Allen's burglary conviction, and remand the case to the trial court for it to enter a judgment of conviction against Allen on the lesser included offense of burglary under R.C. 2911.21(A)(3)/(D), a felony of the third degree and resentence him accordingly. This decision in no way affects the guilty verdicts and sentences issued by the jury on any other count of the indictment. It only affects the entry of conviction and sentence on Count One of the Indictment. The decision of the Stark County Court of Common Pleas is affirmed in all other respects.

{¶52} The judgment is affirmed in part, reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.


By Gwin, P.J., and

King, J., concurs;

Delaney, J., dissents in part,

concurs in part

*Delaney, J., dissenting in part and concurring in part,*

{¶53} I respectfully dissent, in part, from the majority opinion which vacates Allen's conviction under R.C. 2911.12(A)(2)(D), a second- d e g r e e felony, as set f o r t h i n Allen's first assignment of error.

{¶54} I would hold the State, in viewing the evidence most favorable to the prosecution, produced sufficient evidence for reasonable minds to conclude a person was likely to be present in the residence on the evening of January 1, 2022. It was a national holiday, the day after New Year's Eve, when people are typically at home in the evening winding down the holiday season. Under these circumstances, one could logically expect that a person could be present. I therefore would not disturb the jury's verdict. I concur in the majority's disposition of Allen's remaining assignments of error.

_____
HON. PATRICIA A. DELANEY